IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

RWM CONSULTANTS, INC.,

    Plaintiff,

    v.

CENTRO DE GESTION UNICA DEL
SUROESTE, et al.,

    Defendants.

CIVIL NO. 01-2234 (RLA)

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants have filed various dispositive motions seeking dismissal of the claims asserted against them. The Court having reviewed plaintiff's oppositions thereto as well as the evidence submitted by the parties in support of their respective motions hereby rules as follows.

### BACKGROUND

This action was instituted by RWM Consultants, Inc. ("RWM") against the Southwestern Consortium ("Consortium")[1] as well as the ten municipalities composing it[2] and their respective mayors in their

---

[1] Erroneously named as Centro de Gestion Unica del Suroeste ("Centro").

[2] Named defendants are: (1) WALTER TORRES, Mayor of Peñuelas; (2) EDGARDO ARLEQUIN, Mayor of Guayanilla; (3) MARTIN VARGAS, Mayor of Guanica; (4) MIGUEL ORTIZ, Mayor of Sabana Grande; (5) MARCOS IRIZARRY, Mayor of Lajas; (6) FRANCISCO J. RIVERA, Mayor of Hormigueros; (7) ISIDRO NEGRON, Mayor of San German; (8) ABEL NAZARIO, Mayor of Yauco; (9) SANTOS PADILLA, Mayor of Cabo Rojo; (10) GILBERTO PEREZ, Mayor of Maricao and (11) PEDRO LLUCH.

individual and official capacities[3] alleging that the termination of its contracts as well as the failure to pay outstanding invoices was due to political discrimination. PEDRO LLUCH, former Executive Director of the P.R. Department of Labor office responsible for the Centers established throughout Puerto Rico for the implementation of the Workforce Investment Act of 1998 ("WIA") programs, was also named as a defendant.

The Consortium is currently operating under the WIA, 29 U.S.C. §§ 2801-2945, which provides for employment and training opportunities paid with federal funds. The statute specifically indicates that its purpose "is to provide workforce investment systems, that increase the employment, retention, and earnings of participants, and increase occupational skill attainment by participants, and, as a result, improve the quality of the workforce [and] reduce welfare dependency..." 29 U.S.C. § 2811. Employment and training opportunities offered in accordance with the WIA may be furnished either through public or private entities. Pursuant to 29 U.S.C. § 2841 "one stop delivery systems" may be established as part of the program whereby the services provided in accordance with the statute are made available to participants in a single location. The

---

[3]   Plaintiff subsequently voluntarily dismissed the claims asserted against the three New Progressive Party ("NPP") mayors, i.e., (1) ABEL NAZARIO, (2) SANTOS PADILLA, and (3) GILBERTO PEREZ in their individual capacity. *See*, Minutes of Initial Scheduling Conference (docket No. 153) and Order in the Matter of Outstanding Motions (docket No. 154).

CIVIL NO. 01-2234 (RLA)                                        **Page 3**

---

Centro is one such eligible provider of services as defined in 29 U.S.C. § 2801(12) and operates as a one-stop delivery system. The Board of Mayors which the appearing parties belong to serves as the governing body for the Consortium.

The complaint asserts violations of 42 U.S.C. 1983 as well as local causes of action. The complaint seeks both compensatory and punitive damages as well as injunctive relief.

**SUMMARY JUDGMENT**

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if

CIVIL NO. 01-2234 (RLA)                                    **Page 4**

it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). See also, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting

CIVIL NO. 01-2234 (RLA)                                          **Page 5**

evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## THE FACTS

We find the following facts uncontested.

On July 3, 2000, RMW signed contract No. 2001CSO000004 with Centro effective that date through June 30, 2001.

On July 3, 2000, RMW signed contract No. 2001CSO000005 with Centro effective that date through June 30, 2001.

**CIVIL NO. 01-2234 (RLA)**                                    **Page 6**

Pursuant to the Second Clause of Contract 2001CSO000004, plaintiff was to furnish Centro consulting and professional services in the fiscal area of the Administrative Operations by providing "technical assistance in the areas of finance and budgeting, management, administrative affairs, public policy, public relations and communications, as well as in special projects requested by [Centro]."[4]

Pursuant to the Second Clause of Contract 2001CSO000005, plaintiff was to furnish Centro consulting and professional services in the fiscal programmatic area in the Administrative Operations by providing "intensive services, training services, for the provision of technical assistance... in the areas of finance and budgeting, management, administrative affairs, public policy, public relations and communications, as well as in special projects requested by [Centro]."[5]

These contracts were signed by ROBERTO MEJILL TELLADO as President of RMW and GILBERTO PEREZ VALENTIN as President of the Board of Mayors at the time.

Both contracts had an identical termination at will clause allowing for a 15-day advance rescission notice. The clause further provided for RMW's duty to conclude pending work and its right to

---

[4] Exh. B to Motion to Submit Certified Translations (docket No. 222).

[5] Exh. C to Motion to Submit Certified Translations (docket No. 222).

receive payment for services rendered up until the termination of the contract.

As a result of the November 2000 elections, the Popular Democratic Party ("PDP") had a majority on the Board of Mayors and RIVERA-TORO, also a PDP member, was named Board President.

By letter dated January 10, 2001, plaintiff was given written notice of termination of Contract No. 2001CSO000005 by the Board of Mayors through its then president, FRANCISCO J. RIVERA TORO. The letter further indicated that on January 9, 2001, a new Board of Mayors - composed of the mayors of the corresponding municipalities elected during the last electoral event - had been constituted and MR. RIVERA-TORO was named its President.

### SECTION 1983

Plaintiff alleges that the termination of its contracts as well as the failure to pay outstanding invoices was due to political discrimination because RWM's sole shareholder, ROBERTO MEJILL TELLADO, was an active New Progressive Party ("NPP") member.

Section 1983 does not create substantive rights but is rather a procedural mechanism for enforcing constitutional or statutory rights. Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000). The statute, i.e., § 1983 "'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred... by the United States Constitution and federal

statutes.'" <u>Rodriguez Garcia v. Municipality of Caguas</u>, 354 F.3d 91, 99 (1st Cir. 2004) (*citing* <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3, 99 S.C. 2689, 61 L.Ed.2d 433 (1979)).  Hence, it is plaintiffs' burden to identify the particular underlying constitutional or statutory right that is sought to be enforced via judicial proceedings.

In order to prevail in a § 1983 claim plaintiff must bring forth evidence that (1) defendant acted "under color of state law" and (2) deprivation of a federally protected right.  <u>Rogan v. City of Boston</u>, 267 F.3d 24 (1st Cir. 2001); <u>Dimarco-Zappa v. Cabanillas</u>, 238 F.3d 25, 33 (1st Cir. 2001); <u>Collins v. Nuzzo</u>, 244 F.3d 246 (1st Cir. 2001); <u>Cruz-Erazo</u>, 212 F.3d at 612; <u>Barreto-Rivera</u>, 168 F.3d at 45.

There does not seem to be a controversy regarding the "state action" requirement in this case. Plaintiff claims due process and First Amendment violations.

**Due Process**

The Due Process Clause provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1.

In order to properly assert a procedural due process claim under § 1983, plaintiff must show that: (1) it had a property interest and (2) that defendants, acting under color of state law, deprived it of that property interest without providing it with a constitutionally adequate procedure. <u>Aponte-Torres v. Univ. of P.R.</u>, 445 F.3d 50, 56

(1st Cir. 2006); <u>Licari v. Ferruzzi</u>, 22 F.3d 344, 347 (1st Cir. 1994); <u>Rumford Pharmacy v. City of East Providence</u>, 970 F.2d 996, 999 (1st Cir. 1992); <u>PFZ Properties v. Rodriquez</u>, 928 F.2d 28, 30 (1st Cir. 1991). "Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property interest... cannot be deprived of that interest without due process of law." <u>Figueroa-Serrano v. Ramos-Alverio</u>, 221 F.3d 1, 6 (1st Cir. 2000). Hence, it is only in situations where plaintiff has been able to establish a property right at stake that due process protection comes into play. *See*, <u>Redondo-Borges v. U.S. Dep't of Housing and Urban Dev.</u>, 421 F.3d 1, 7 (1st Cir. 2005) ("[f]or a claim to succeed, the plaintiffs must identify a protected property or liberty interest.")

Property interests, however, are not created by the Constitution but derive instead from state law provisions. "[T]he Constitution does not create property interests; instead, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" <u>Santana v. Calderon</u>, 342 F.3d 18, 23 (1st Cir. 2003) (*citing* <u>Bd. of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

A party's unilateral belief does not by itself translate into a property right subject to due process concerns. "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral

CIVIL NO. 01-2234 (RLA)                                           **Page 10**

expectation of it. He must, instead, have a legitimate claim or entitlement to it.'" <u>Macone v. Town of Wakefield</u>, 277 F.3d 1, 9 (1st Cir. 2002) (*citing* <u>Bd. of Regents</u>, 408 U.S. at 577); <u>Santana v. Calderon</u>, 342 F.3d at 24). *See also*, <u>Redondo-Borges</u>, 421 F.3d at 8 ("In order to establish a constitutionally-protected property interest, a plaintiff must demonstrate that [he] has a legally recognized expectation" to the property interest at issue.)

Plaintiff has failed to present sufficient evidence to establish that it had a property interest at stake in these proceedings. It has not clearly defined the deprivation or deprivations that it was subjected to nor what it considers to be the adequate process due. Assuming its claim is based on the cancellation of the contracts at issue, they both had identical early termination clauses allowing for a two-week rescission notice which was given to plaintiff. Hence, RWM cannot claim a proprietary entitlement for the remainder of the one-year contract term.

Plaintiff cites the monies allegedly due at the time the contracts were ended as property rights triggering due process concerns. However, it is not sufficient that a deprivation has occurred. Plaintiff carries the burden of also pointing to the lack of constitutionally sound proceedings at the state level. <u>Rumford</u>, 970 F.2d at 999. Plaintiff must present evidence that the state does not have available review mechanisms comporting with minimum due process requirements. <u>Zinermon v. Burch</u>, 494 U.S. 113, 126, 110 S.Ct.

975, 108 L.Ed.2d 100 (1990). *See also*, <u>Ramirez v. Arlequin</u>, 447 F.3d 19, 25 (1st Cir. 2006) (claim for breach of contract to pay monies not sufficient for due process claim "unless state contract remedies were closed to the plaintiff."); <u>Aponte-Torres</u>, 445 F.3d at 56 (complaint must include information on the process available and its constitutional deficiency); <u>Wehran-Puerto Rico, Inc. v. Municipality of Arecibo</u>, 160 F.Supp.2d 276, 287 (D.P.R. 2000) ("First Circuit... reluctant to find due process violations in breach of contract claims against the government... The proper remedy for a plaintiff is a state law suit for breach of contract.") Otherwise, "[i]f the federal courts were to entertain civil rights complaints based on procedural deprivations for which adequate state remedies exist, 'every disgruntled applicant could move [its procedural grievances] into the federal courts ...[,] any meaningful separation between federal and state jurisdiction would cease to hold and forum shopping would become the order of the day.'" <u>Rumford</u>, 970 F.2d at 999 (*citing* <u>Roy v. City of Augusta, Me.</u>, 712 F.2d 1517, 1523 (1st Cir. 1983)).

In order to ascertain the adequacy of the procedures available to plaintiffs "'it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure... effecting the deprivations, and any remedies for erroneous deprivations provided by statute or tort

CIVIL NO. 01-2234 (RLA)                                      Page 12

---

law.'" <u>Licari</u>, 22 F.3d at 347 (*citing* <u>Zinermon v. Burch</u>, 494 U.S. at 126).

Plaintiff has failed to allege much less present evidence indicative of a lack of process and/or that the process afforded indeed proved inadequate.[6]

Accordingly, we find that no legal grounds exist to support plaintiffs' procedural due process claim inasmuch as RWM had no legal expectancy for the continuance of the contractual relationship for its entire term. Further, the record is devoid of evidence indicative of the fact that no adequate procedures were available for demanding payment of the sums allegedly due. Thus, the procedural due process claim is deficient and must be dismissed.

### FIRST AMENDMENT

Dismissal of the due process claim, however, does not dispose of the political discrimination allegations subject to First Amendment protection. *See i.e.,* <u>Gomez v. Rivera Rodriguez</u>, 344 F.3d 103, 111 n.5 (1st Cir. 2003) and <u>Nieves-Villanueva v. Soto-Rivera</u>, 133 F.3d 92, 98 (1st Cir. 1997) (noting difference between the two causes of action).

Independent contractors are afforded First Amendment protection similar to that provided to government employees. <u>Bd. of County Comm'rs v. Umbehr</u>, 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843

---

[6] It must be noted that just because a plaintiff disagrees with the legal soundness of a final result does not mean that the process was not a fair one for procedural due process purposes.

CIVIL NO. 01-2234 (RLA)                                    Page 13

(1996); O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996); Nieves-Villanueva, 133 F.3d at 98-99.

In a suit filed by an accountant and an attorney claiming that their respective professional contracts had been cancelled due to their political affiliation the Court of Appeals noted that the complaint must "plead that [plaintiffs] were engaged in protected association, that they were entitled to payment under their contracts, and that the Municipality denied the payment in retaliation for their exercise of associational rights." Ramirez v. Arlequin, 447 F.3d at 25.

In order to determine whether or not plaintiff was the victim of objectionable political patronage we must follow the Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) route which places the initial burden upon plaintiff who must present sufficient evidence to establish that "political affiliation was a substantial or motivating factor in the decisional calculus." Gomez v. Rivera Rodriguez, 344 F.3d at 110; Padilla-Garcia v. Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000); Nieves-Luciano v. Hernandez-Torres, 397 F.3d 1, 4 (1st Cir. 2004); Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 51 (1st Cir. 2005). *See also*, Figueroa-Serrano, 221 F.3d at 7 (constitutionally protected conduct substantial factor in the decision).

CIVIL NO. 01-2234 (RLA)                                    **Page 14**

---

"If the plaintiff satisfies this burden the devoir of persuasion shifts to the defendants to prove that they would have taken the same action regardless of plaintiff's political affiliation." <u>Gomez v. Rivera Rodriguez</u>, 344 F.3d at 110; <u>Nieves-Luciano</u>, 397 F.3d at 4; <u>Mercado-Alicea</u>, 396 F.3d at 51, "commonly referred to as the *Mt. Healthy* defense." <u>Padilla-Garcia</u>, 212 F.3d at 74. *See also*, <u>Cepero-Rivera v. Fagundo</u>, 414 F.3d 124, 133 (1st Cir. 2005) (political discrimination claims "subject to the burden-shifting analysis developed after *Mt. Healthy*").

Merely juxtaposing plaintiff's political affiliation with a claim that plaintiff was treated unfairly will not suffice to meet the causation requirement. <u>Padilla-Garcia</u>, 212 F.3d at 74; <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 58 (1st Cir. 1990). Similarly, the mere fact that the defendants charged with the discriminatory conduct belong to a different political party is insufficient for plaintiff to meet its burden and avoid summary disposition of a patronage claim. <u>Figueroa-Serrano</u>, 221 F.3d at 7-8; <u>Kauffman v. P.R. Tel. Co.</u>, 841 F.2d 1169, 1172 (1st Cir. 1988).

An "assertion about statements of political affiliation – unaccompanied by any specific factual information to support [a political discrimination] claim, and unrelated to any employment action taken by [defendant] against [plaintiff] - is patently insufficient to establish an act of political discrimination." <u>Lopez-Carrasquillo</u>, 230 F.3d at 414. However, plaintiff is not

required to prove its discrimination claim by direct evidence. "In a political discrimination case, the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-Garcia, 212 F.3d at 77. Circumstantial evidence of politically-based discriminatory animus may suffice if, when considered in toto, would allow a rational jury to make a reasonable inference of improper motive. Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 101-02 (1st Cir. 1997); Anthony v. Sundlun, 952 F.2d 603, 605-06 (1st Cir. 1991).

On a motion for summary judgment scenario plaintiff must produce sufficient evidence for a reasonable fact finder to infer that its political affiliation was a substantial or motivating factor behind the decision at issue. Thus, the defendant "bears the burden of persuading the factfinder that his/her reason for the... action [taken] is credible." Reyes-Canada v. Rey-Hernandez, 286 F.Supp.2d 174, 178 (D.P.R. 2003).

Assuming MR. MEJILL-TELLADO's political affiliation with the NPP, we find the record devoid of adequate support to justify plaintiff's political discrimination claim. The evidence used by plaintiff in opposition to the outstanding summary judgment petitions can be summarized as: a statement by RIVERA-TORO, Mayor of Hormigueros, in plaintiff's presence regarding alleged instructions not to process contractor's payments unless expressly authorized by

him and comments by JIMMY ROSA and ABEL NAZARIO relating to testimony of third-parties which we will address *seriatim.*

According to MEJILL-TELLADO, at a visit to the Southwest Consortium on November 29, 2000, Mayor RIVERA-TORO informed the employees in the deponent's presence that: (1) the PDP had won the elections, (2) it had a majority on the Board of Mayors, (3) RIVERA-TORO would be named Board President, and (4) "that he [RIVERA-TORO] was giving instructions to the employees that nobody be paid without his consent." Tr. 33-34; 37-39.

No political animus can be discerned from the aforementioned testimony. Rather, the first three statements merely constitute announcements of the election results and its effect on the Board's constitution whereas the instruction regarding payment was politically neutral in that it was not directed at the members of any particular party. Apart from the fact that this statement does not connote difference in treatment based on political affiliation, the deponent also indicated that he was aware of only two contractors who had been paid; one of them was NPP and the other a PDP. MR. MEJILL-TELLADO conceded that he had no information regarding the payment status of the other contractors. Tr. 50.

Apart from the aforementioned comments made by FRANCISCO RIVERA TORO, the other evidence proffered by plaintiff in support of its political discrimination claim constitutes inadmissible hearsay. However, it is axiomatic that any testimony used in a motion for

summary judgment setting must be admissible in evidence, i.e., based on personal knowledge and otherwise not contravening evidentiary principles. Rule 56(e) specifically mandates that affidavits submitted in conjunction with the summary judgment mechanism must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Hoffman v. Applicators Sales and Serv., Inc., 439 F.3d 9, 16 (1st Cir. 2006); Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000). *See also*, Quiñones v. Buick, 436 F.3d 284, 290 (1st Cir. 2006) (affidavit inadmissible given plaintiff's failure to cite "supporting evidence to which he could testify in court"). The affidavit must contain facts which are admissible in evidence. Lopez-Carrasquillo, 230 F.3d at 414. "Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).

MR. MEJILL-TELLADO initially cites his conversation with JIMMY ROSA, former interim Executive Director, regarding instructions given to MR. ROSA not to process payments. Tr. 39, 40, 41 & 42. This testimony is obviously hearsay inasmuch as the deponent is testifying as to what a third party had told MR. ROSA.

Additionally, in his deposition MR. MEJILL-TELLADO relies on a conversation allegedly held with ABEL NAZARIO, Mayor of Yauco, who purportedly advised the deponent of what had transpired during a

CIVIL NO. 01-2234 (RLA)                                    **Page 18**

---

meeting of the Board of Mayors where the decision to "get rid of PDP employees and contractors" was allegedly taken. Again, we are faced with a double-hearsay situation. The deponent is testifying as to matters not personally known to him but rather known only to the individual relaying the information to the deponent. Tr. 61. *See also*, Tr. 40, 42, 53, 54, 55, 62, 73. Accordingly, this testimony may not be considered by the court in disposing of the outstanding motions.[7]

Additionally, it must be noted that the record is totally devoid of any evidence to substantiate the political discrimination claims asserted against MR. LLUCH - the only named defendant who was not a town mayor.

Based on the foregoing, we conclude that summary judgment dismissing plaintiff's First Amendment claims is warranted.

### MUNICIPAL LIABILITY

Defendants further argue that there can be no municipal liability in this case.

The doctrine of *respondeat superior* - whereby liability is imposed on employers for the acts or omissions of their employees - is inapposite in actions brought under § 1983. <u>Cepero-Rivera</u>, 414 F.3d at 129; <u>Baron v. Suffolk County Sheriff's Dep't</u>, 402 F.3d 225,

---

[7] We reject plaintiff's belated attempt to cure this blatant Rule 56(e) deficiency. *See*, Urgent Motion to Strike (docket No. **236**) and Motion to Request that Urgent Motion... be deemed Unopposed (docket No. **243**) which are **GRANTED.**

236 (1ˢᵗ Cir. 2005). In order to hold a municipality accountable plaintiff must present evidence that the damages complained of resulted from the "execution of a [municipality's] policy or custom". Monell v. Dep't of Soc. Serv., 436 U.S. 658, 695, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

> [A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. Rather, a municipality is liable only when execution of a government's policy or custom, whether made by its lawmakers or by those edicts or acts [that] may fairly be said to represent official policy, inflicts the injury.

Wilson v. City of Boston, 421 F.3d 45, 59 (1ˢᵗ Cir. 2005) (citations and internal quotation marks omitted).

There is no allegation of a discriminatory policy or custom in this case. Further, just because a municipality forms part of a consortium it is not liable for the consortium's acts or omissions. This would be tantamount to subjecting municipalities to vicarious liability which is disallowed under sec. 1983. A consortium is a distinct and separate legal entity from the individual municipalities that compose it and has its own separate juridical personality pursuant to P.R. Laws Ann. tit. 21, § 4051(p).

Even though high ranking municipal officers through their actions may establish the necessary policy to render the municipality liable under § 1983,[8] the conduct charged the individual mayors sued in these proceedings were taken by them solely in their capacity as members of the Consortium's Board of Mayors, not in their capacity as mayors of their respective municipalities. A municipality may not be found "liable for actions taken by its mayor outside the scope of his official duties as mayor." Caraballo-Seda v. Rivera-Toro, 392 F.Supp.2d 144, 147 (D.P.R. 2005).

Hence, plaintiff has "failed to connect the alleged illegal conduct to the Municipalities, as required by Section 1983." Id. at

---

[8]  One sole action may be tantamount to municipal policy.  "An unconstitutional policy... may be inferred from a single decision or act... [but] the isolated action must be taken by a municipal official with 'final policy-making authority' in the relevant area of the city's business." Wilson, 421 F.3d at 59 (citing Roma Constr. Co. v. aRusso, 96 F.3d 566, 576 (1st Cir. 1996)). It is plaintiff's burden to establish that a particular officer had the necessary authority to set the municipal policy at issue. Id. at 60.

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered... [P]articular officers may have authority to establish binding [city] policy respecting particular matters and to adjust that policy for the [city] in changing circumstances...  We hold that municipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

Id. at 59 (citing Penbaur v. City of Cincinnati, 475 U.S. 469, 481-83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). See also, Baron, 402 F.3d at 236 ("In a § 1983 suit based on an official policy promulgated by officials with final policy-making authority, attribution to the municipality is easily established.")

147. Therefore, the claims asserted against the ten municipalities members of the Southwestern Consortium and the defendants sued in their individual and official capacities as their respective mayors must be dismissed.

### SUPPLEMENTAL JURISDICTION

The Court having dismissed the federal-based causes of action, plaintiffs' remaining state law claims are hereby **DISMISSED WITHOUT PREJUDICE**. <u>McGee v. Delica Co., Ltd.</u>, 417 F.3d 107 (1st Cir. 2005); <u>Gonzalez v. Family Dept.</u>, 377 F.3d 81, 89 (1st Cir 2004).

### CONCLUSION

Based on the foregoing, the following motions for summary judgment[9] filed by defendants are hereby **GRANTED**[10] and the claims asserted in the complaint are hereby **DISMISSED**:

- Motion for Summary Judgment (docket No. **209**) filed by codefendants MIGUEL G. ORTIZ VELEZ and MARCOS IRIZARRY individually as well as the following municipalities: (1) San German; (2) Guayanilla, (3) <u>LAJAS</u> and (4) Sabana Grande

---

[9]   Because summary judgment was granted there is no need to address the Motion for Judgment on the Pleadings, filed by codefendants (1) PEDRO E. LLUCH, (2) SANTOS PADILLA FERRER, (3) ABEL NAZARIO QUIÑONES, (4) ISIDRO NEGRON, (5) WALTER TORRES MALDONADO, (6) MIGUEL G. ORTIZ and (7) JAVIER RIVERA TORO (docket No. **206**) which is hereby **DENIED AS MOOT**.

[10]   *See also*, Plaintiff's Oppositions (dockets No. **225, 226** and **230**) and Reply filed by MIGUEL G. ORTIZ VELEZ, MARCOS IRIZARRY and the Municipalities of San German, Guayanilla, Lajas and Sabana Grande (docket No. **228**).

which motion was subsequently joined by: (1) PEDRO E. LLUCH, (2) SANTOS PADILLA FERRER, (3) ABEL NAZARIO QUIÑONES, (4) ISIDRO NEGRON, (5) WALTER TORRES MALDONADO, (6) MIGUEL G. ORTIZ and (7) JAVIER RIVERA TORO (docket No. **215**) as well as Centro (docket No. **221**);

- Motion to Dismiss filed by the codefendants PEDRO J. GARCIA FIGUEROA, the Municipality of Hormigueros, WALTER TORRES MALDONADO and the Municipality of Peñuelas (docket No. **211**); and

- Motion for Summary Judgment filed by codefendants MARTIN VARGAS MORALES, in his personal and official capacity and the Municipality of Guanica (docket No. **218**).

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 21st day of June, 2007.

                                    S/Raymond L. Acosta
                                    RAYMOND L. ACOSTA
                                United States District Judge